IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| ANN LIBRI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 06-3167 |
| | ) | |
| PAT QUINN,[1] JACOB MILLER, | ) | |
| TIMOTHY MARTIN, MICHAEL | ) | |
| R. STOUT, and SCOTT DOUBET, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

RICHARD MILLS, U.S. District Judge:

Pending before the Court are the Defendants' motion for summary judgment and the Plaintiff's motion to strike the Defendants' motion for summary judgment.

Motion to strike is DENIED.

Motion for summary judgment is ALLOWED.

---

[1]Pat Quinn, the Governor of Illinois, is substituted for former Governor Rod Blagojevich as the proper Defendant, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

## I. BACKGROUND

Prior to her termination, Plaintiff Ann Libri ("the Plaintiff" or "Ms. Libri") was an employee of the Illinois Department of Transportation ("IDOT") in Springfield, Illinois.  The Plaintiff worked in the Division of Traffic Safety, Grants Section, which was abolished in its entirety.  Ms. Libri testified that as of May 27, 2004, she was aware that her position was being abolished.[2]   The Plaintiff alleges that the effective date of her termination was June 30, 2004.  This lawsuit was filed on June 30, 2006.

The Defendants allege that the Plaintiff's position was one of a number of jobs that were abolished at the end of fiscal year 2004, pursuant to a material reorganization.  According to the Defendants, the Office of Management and Budget ("OMB") had called for a reduction in the employee headcount in numerous State agencies, in response to a pending financial crisis.

The 2005 budget instructed IDOT in particular, under the heading "Headcount Reduction," to "[s]treamline operations and improve efficiency

---

[2]The Notice was dated May 24, 2004.  The Plaintiff's father signed the certified mail receipt on May 27, 2004.

by consolidating functions and reorganizing operations agency-wide."
Additionally, the OMB directed IDOT to reduce its headcount by 190
personnel compared to the authorization for Fiscal Year 2004. The
authorized headcount for Fiscal Year 2004 was 6,315. Thus, pursuant to
the OMB's directive, the recommended headcount for Fiscal Year 2005 was
6,149.[3] Even prior to releasing its proposed budget, the OMB informally
advised IDOT, in late 2003, that Fiscal Year 2005 was going to be "a tough
budget season" and that IDOT would need to streamline its operations and
reduce its headcount.

The Defendants allege that, in response to the OMB's directive, IDOT
implemented a material reorganization.[4] Its purpose was to address the
State's unfunded pension liability and significant budgetary deficit by
reducing waste and eliminating redundancies. The Defendants further

---

[3]Because the 2005 budget contemplated 24 employee of the Illinois Commerce
Commission rail staff being merged with IDOT, however, the net reduction was 166
fewer IDOT employees for Fiscal Year 2005 than were authorized for Fiscal Year
2004.

[4]Because OMB informally notified IDOT of the impending budgetary
restraints before release of the proposed 2005 fiscal budget, preliminary planning for
the material reorganization began sometime prior to the budget's release.

3

contend that the positions held by the 20 Plaintiffs in these cases (including a total of 19 Plaintiffs in two similar cases), as well as 27 other incumbent positions, were abolished pursuant to the material reorganization.[5] Additionally, a total of 104 positions were abolished at IDOT which did not then have employees assigned to them. The Plaintiff disputes these allegations, contending that IDOT did not develop a financial analysis of the savings to be gained from the material reorganization and that the purpose of the reorganization was to create vacancies to be filled by the common scheme to control state employment. Moreover, the Plaintiff asserts that the material reorganization was a pretext for discriminatory reasons.

The Plaintiff's Complaint includes eight counts, though some are no longer being pursued. In Counts I and II, the Plaintiff asserts that her termination was unlawful and in violation of the Personnel Policies of IDOT. In Count III, the Plaintiff alleges a denial of her due process rights

---

[5]The Defendants claim that a total of 166 positions were abolished as a result of the material reorganization. This number included 47 incumbent positions with individuals who received layoff notices (an additional 15 left IDOT's payroll, and this reduced headcount, through bumping rights and transfers to other agencies).

guaranteed by the Illinois Constitution. Each of these Counts is asserted against Defendants Timothy Martin, Michael R. Stout and Scott Doubet.

During the Spring and early Summer of 2004, Martin was the Secretary of IDOT.[6] In February of 2003, Stout was hired by IDOT on a contract basis. His primary duty was to gather facts to aid IDOT in the determination of whether employees who took "voluntary reductions"[7] immediately prior to or following the gubernatorial election in the Fall of 2002 had done so in conformance with the Personnel Rules. His contract ended in June of 2003.[8] From June 16, 2003, until November 1, 2004,

---

[6]The Defendants note that Martin is no longer the Secretary of IDOT and is no longer employed in State government. The Defendants claim, therefore, that pursuant to Federal Rule of Civil Procedure 25(d), the current Secretary of IDOT, Gary Hannig, should be substituted as the party Defendant, in his official capacity. However, it appears that most of the pending claims against Martin are individual capacity claims. To the extent that any official capacity claims remain, Hannig will be substituted as the party Defendant, pursuant to Rule 25(d).

[7]A "voluntary reduction," for purposes of this matter, consists of transferring from a Rutan exempt position to a Rutan covered position without a significant pay decrease, if any pay decrease at all, and without going through the Rutan interview process. See Rutan v. Republican Party of Illinois, 497 U.S. 62 (1990).

[8]No action was taken in 2003 against any of the eleven IDOT employees who took a voluntary reduction immediately before or immediately after the 2002 gubernatorial election. Likewise, no action was taken against those individuals during the material organization because of those voluntary reductions. Nevertheless, over a year later, seven of those eleven who had taken voluntary reductions had their positions abolished. Six of these individuals are Plaintiffs in the Whitlow case. See

Stout was employed with IDOT as the Deputy Director of the Bureau of Finance and Administration. Stout was then appointed the Acting Director of the Division of Traffic Safety. Doubet was the IDOT Bureau Chief of Personnel Management from February of 2004 through April 24, 2009. He is no longer employed in State government.

The Plaintiff does not dispute that she is no longer pursuing Counts IV, V and VI. Count VI is the only claim asserted against Defendant Jacob Miller, who preceded Doubet as the IDOT Bureau Chief of Personnel Management. Accordingly, Miller is entitled to summary judgment.

Count VII was asserted against Defendant Rod Blagojevich, the former Governor of Illinois. Because Mr. Blagojevich is no longer in office, pursuant to Federal Rule of Civil Procedure 25(d), Governor Pat Quinn is now the proper Defendant. Count VII seeks a declaratory judgment and mandamus relief compelling the removal of Directors of various Departments who allegedly violated provisions of the Finance Act.

---

Whitlow, et al. v. Martin, et al., CDIL Case Number 3:04-CV-3211. As to the remaining four, one was terminated for unrelated reasons, one resigned, and two are still employed at IDOT.

Count VIII is asserted against Defendants Martin, Stout and Doubet. In Count VIII, the Plaintiff alleges that her position was abolished because of her political affiliation, in violation of her First Amendment rights.

The Plaintiff's husband is the Circuit Clerk of Sangamon County. Mr. Anthony Libri has been the Republican County Chairman for a number of years, since the retirement of Irv Smith. After meeting her husband in 1994, Ms. Libri's political activity increased. Her political activities involved working on various Republican campaigns at the local and state level, attending fundraisers and other Republican events, working phone banks, walking in parades, and walking in neighborhoods. Ms. Libri recalls assisting a friend who was a Republican with her local political campaign and thinks she may have attended Republican fundraisers and similar Republican events. The Plaintiff has never run for political office herself. She has never held a position within the Republican Party organization locally or regionally or nationally.

The Plaintiff testified that she did not know whether four of the five Defendants were aware of her political affiliation. Ms. Libri knew

7

Defendant Michael R. Stout and testified that Stout knew her husband. Ms. Libri believes that Stout was aware of her political affiliation because: (1) he knew both she and her husband and knew how involved they were with the Republican Party; (2) she thinks that when her husband ran for Mayor of Springfield[9] as a Republican, Stout commented that she must be busy because of the election; and (3) when her husband ran for mayor it was very well known in the community.

Ms. Libri asserts that after the material reorganization, her position was re-established and filled by an individual named Megan Eairheart.  The Plaintiff saw an article in the newspaper, dated March 2007, that referenced Eairheart and her position as an Assistant Occupant Protection Coordinator with IDOT.  Ms. Libri contends that this article (produced by her attorney following her deposition) demonstrates that her  position at IDOT was reestablished after the material reorganization.   However, Eairheart's position is substantively and structurally different than the position that Plaintiff held.

---

[9]This political position is technically a non-partisan position.

## II. ANALYSIS

### A. Summary judgment standard

The entry of summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "Rule 56(c) mandates the entry of judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322.  If a defendant can show the absence of some fact that the plaintiff must prove at trial, then the plaintiff must produce evidence, and not merely restate his allegations, to show that a genuine issue exists.  Sartor v. Spherion Corp., 388 F.3d 275, 278 (7th Cir. 2004).  The Court construes all facts and makes all reasonable inferences in favor of the non-moving party.  Magin v. Monsanto Co., 420 F.3d 679, 686 (7th Cir. 2005).

B. Statute of limitations

(1)

The Defendants contend that Counts I, II, III and VIII are barred by the applicable statute of limitations.  The statute of limitations for those claims is two years.  See Hileman v. Maze, 367 F.3d 694, 696 (7th Cir. 2004); 735 ILCS 5/13-202.  The key inquiry in this case involves when the statute of limitations began to run.  Federal law governs the date of accrual. See Hileman, 367 F.3d at 696.  The Supreme Court has "held that the proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become painful."  Chardon v. Fernandez, 454 U.S. 6, 8 (1981) (per curiam) (citing Delaware State College v. Ricks, 449 U.S. 250, 258 (1980)).  "A § 1983 claim accrues when the plaintiff knows or should know that his or her constitutional rights have been violated." Hileman, 367 F.3d at 696 (internal quotation marks and citation omitted).

In determining the date of accrual, the Seventh Circuit has set forth a two-step analysis: (1) the court must first identify the injury; (2) the court must then identify the date on which the plaintiff could have sued for that

10

injury, which is the date that coincides with the date that plaintiff knew or should have known that her rights were violated.  See Hileman, 367 F.3d at 696 (citing Kelly v. City of Chicago, 4 F.3d 509, 511 (7th Cir. 2003)); see also Kuemmerlein v. Bd. of Educ. of Madison Metro School Dist., 894 F.2d 257, 260 (7th Cir. 1990) ("a discriminatory act occurs when a potential defendant makes a discriminatory employment decision").

The Plaintiff notes that this Court previously denied the Defendants' motion to dismiss on statute of limitations grounds.  In an Order [d/e 21] entered on December 18, 2006, the Court determined "that if the Plaintiff's allegations are taken as true, as they must be at this stage of the litigation, then her claims did not accrue until the effective date of her termination." The record has now been developed and the Court must consider the Defendants' argument pursuant to the legal standard governing summary judgment motions.  Accordingly, the Court's holding on the motion to dismiss is inapposite.

The Plaintiff notes that some employees who were given notice were not terminated, and some employees who were terminated were later

recalled. Moreover, some employees who were not on the notice list were terminated. The Plaintiff alleges that two employees, Janell Hilgers and Lori Evers, were given notices at the same time as the Plaintiff, and they were not terminated.

The Plaintiff further asserts that at least three employees were recalled to their positions immediately after terminations became effective. The Auditor General found that IDOT had to recall three employees, including Steve Esslinger, because grant processing in the safety grants section was not being accomplished.

The Plaintiff further contends that on May 20, 2004, Stout, Doubet, Smith and Piersma discussed the layoff, specifically relating to the Division of Aeronautics. Stout provided a list and said, "These are who we want." The Plaintiff alleges that Lori Bildilli, an employee of the Division, does not appear on that list, but she was given notice of termination.

Based on the foregoing, the Plaintiff claims that it is apparent that this "material reorganization" was a rolling work in progress and that changes were made in the "target" lists even after notices of termination were sent,

and in fact, even after the effective date of termination.  Even in June of 2004, Karin Smith wrote herself a note to change the lists to reflect those who had been "saved."  Brad Clearwater, a Division of Aeronautics employee terminated at the same time as the Plaintiff, asked Doubet for a copy of any documents or plans associated with the terminations.  Doubet indicated that there were no such documents available.

For these reasons, Ms. Libri argues that the initial notice to her was far from the "final, ultimate, non-tentative decision" to terminate her employment.  <u>See</u> <u>Smith v. Potter</u>, 445 F.3d 1000, 1007 (7th Cir. 2006).  In <u>Smith</u>, the court considered a Title VII claim by a postal worker.  <u>See</u> <u>id.</u> at 1001.  The plaintiff in that case was notified by letter on October 22, 1998, that she would be terminated November 27, 1998.  <u>See</u> <u>id.</u> at 1007.  Although Smith's claim was untimely under either date, the Seventh Circuit held that November 27, 1998, not October 22, 1998, was the accrual date for purposes of 29 C.F.R. § 1614.105(a)(1).  <u>See</u> <u>id.</u>  It is unclear why the Seventh Circuit determined that the latter date was when Smith's claim accrued, which appears to be inconsistent with Supreme Court and Seventh

Circuit precedent.  It may be that the court did not elaborate because the claim was untimely under either date.  In any event, this Court must follow Supreme Court precedent in determining when Ms. Libri's claim accrued.

In support of their argument, the Defendants note that the alleged injury is an employment decision that the Plaintiff claims violated her constitutional rights.  The chance that an employee who has received a layoff notice may be recalled is not enough to prevent the start of the statute of limitations.  See Kuemmerlein, 894 F.3d at 260.  "No matter what the chance of recall, a plaintiff's cause of action for employment discrimination stemming from a layoff decision runs from the time of notice, not from the time of actual termination."  Id.

(2)

The Court concludes that the Plaintiff's allegations pertaining to other employees who were recalled or were not terminated after receiving notice are simply not relevant to the statute of limitations analysis.  The first step is to identify the injury before determining when Ms. Libri knew or should have known about the alleged violation of her rights.  See Hileman, 367

F.3d at 696.  As <u>Kuemmerlein</u> makes clear, the hope or possibility of recall does not toll the statute of limitations.  The injury occurred on May 27, 2004, when Ms. Libri was informed that her position was being abolished and she would be laid off effective June 30, 2004.  Regardless of what may have happened to other employees, the decision as to Ms. Libri never changed.  Thus, the decision to terminate her employment occurred on May 27, 2004.

Turning to the second step, there is no evidence that the notice was equivocal.  The Plaintiff was informed that "you will be laid off . . . effective close of business June 30, 2004."  At her deposition, Ms. Libri testified that as of May 27, 2004, she was aware and understood that her position was being abolished.  Additionally, Ms. Libri stated that between May 24, 2004, the date on her layoff notification letter, and June 30, 2004, the effective date of her layoff, she received no written or verbal indication from anyone at IDOT that she was going to keep her job or that her layoff notification was going to be withdrawn or rescinded.  Accordingly, the record establishes that the Plaintiff knew of the employment decision on May 27, 2004.

In recognizing the need for bright line rules, the Seventh Circuit has observed that a plaintiff's "hopes of a recall" is not enough to prevent the running of the statute of limitations on the date that she received notice. See Kuemmerlein, 894 F.2d at 260; see also Ricks, 449 U.S. at 261 (recognizing "that the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods" because "[t]he existence of careful procedures to assure fairness in the [employment] decision should not obscure the principle that limitations periods normally commence when the employer's decision is made").   Accordingly, any subjective belief that the layoff decision was not final is simply not relevant.

The Plaintiff filed this lawsuit on June 30, 2006, more than two years after her claims accrued on May 27, 2004, when she received notice that her position was being abolished.  There are no genuine issues of material fact in dispute as to this issue.  Accordingly, the Plaintiff's claims contained in

Counts I, II, III and VIII are barred by the two-year statute of limitations.[10]

The Defendants are entitled to summary judgment on each of those counts.

C. Other claims

The Court previously noted that Plaintiff has stipulated that she is not pursuing Counts IV, V and VI. Accordingly, the Defendants are entitled to summary judgment as to those claims.

The Defendants contend that Plaintiff is not entitled to the equitable relief sought in Count VIII because the Defendants are entitled to summary judgment with respect to the Plaintiff's underlying claims.[11] The Court assumes that the Defendants intend to refer to Count VII, which requests a declaratory judgment and mandamus relief compelling the Governor to remove the Directors of various offices and name replacement Directors. Because the Court has determined that Defendants are entitled to summary judgment as to the damages claims, the Court concludes that Plaintiff's

---

[10]The Court further finds that summary judgment in favor of the Defendants would also be appropriate as to Counts I and II because the IDOT Personnel Policies Manual creates no legal rights for the Plaintiff.

[11]Count VIII includes the Plaintiff's First Amendment damages claim. It also seeks equitable relief in the form of an injunction.

17

claims for equitable relief are without merit.  <u>See</u> <u>Myers v. Brunsvold</u>, 617

F. Supp.2d 762, 774 (C.D. Ill. 2009); <u>see</u> <u>also</u> <u>Coffey v. Cox</u>, 218 F.

Supp.2d 997, 1006 n.12 (C.D. Ill. 2002).

## III. CONCLUSION

The Court has concluded that the Defendants are entitled to summary

judgment on all claims.  Before filing her response to the motion for

summary judgment, the Plaintiff filed a motion to strike the Defendants'

motion.  The Plaintiff's motion to strike was based primarily on her

assertion that Defendants' motion, which consisted of over 400 alleged

undisputed statements of fact–many of which contained multiple

sentences–did not comply with the Local Rules.  According to the motion

to strike, Counsel had spent over 130 hours reviewing the statements of

material fact and supporting materials and anticipated that Plaintiff's

response to the summary judgment motion would be in excess of 250

pages.[12] Given that the Plaintiff was able to compose a response to the

---

[12]In fact, the Plaintiff's response brief, including her response to the
Defendants' statements of material fact and her own statements of additional facts,
was 393 pages.

motion for summary judgment, the Court finds that Plaintiff's request is largely moot.

Ergo, the Defendants' motion for summary judgment [d/e 77] is ALLOWED.  The Plaintiff's motion to strike the motion for summary judgment [d/e 88] is DENIED.

The Clerk will enter judgment in favor of the Defendants and against the Plaintiff.

This case is closed.

ENTER: July 15, 2010

FOR THE COURT:

s/Richard Mills
United States District Judge

19